United States v. Shiman Leibovitz. Good morning, Your Honor. How are you today? Your Honor, I'm here on a bail application, as you're aware. The defendant here is charged with a conspiracy to commit kidnapping and murder for hire. The evidence includes it involved a get, trying to obtain a get for a woman who was unable to get a divorce for 16 years. The evidence primarily is tape-recorded conversations and a confidential source who the discovery has revealed was a longtime government agent and acting as a government agent in this case. And just up front, I want to be clear. We do not dispute there were serious discussions of violence on this case, very serious violence on the tape-recorded conversations. We believe that there is an entrapment defense. We're just beginning to get into the evidence, so we're not here to litigate that entrapment defense or to argue that entrapment defense. But, Your Honor, with respect to the issue of bail, we believe that there was a clear error by the district court in relying solely on evidence of past criminal and dangerous behavior to predict future. Now, that past activity is the activity in this case. Yes, Your Honor. And it's all the ‑‑ it's solely based on, and you can tell what the district court's ruling is based on, on pages 32 through 34 of the transcript from the hearing. I'm clear on that. So your view is in predicting future violence, you should not consider the conduct in the charged crime? No. Okay, help me out. Yes. I believe, Your Honor, that the law is clear, and particularly with respect to, as stated by the Seventh Circuit in its case, United States v. Dominguez, that you can rely on what occurred in the case, but you cannot rely solely on that evidence if it doesn't predict future behavior. Just to say that the person committed a bad crime, an extremely violent crime in the past, there's nothing in that extremely violent past crime. But it does suggest, doesn't it, that because it was serious, the charges are serious, that the potential penalty, if convicted, is very serious. And because of the ‑‑ it is the very seriousness of the possible penalty which makes flight more likely than it might otherwise be. Yes, Your Honor. That's correct. And I wasn't clear. I was really addressing first the issue of danger to the community. And I ‑‑ Your Honor, I do understand this. So if in this case the target had been killed, your argument would be that since he was the only target, it says nothing about future violence? Your Honor, it could say something about future violence if it were, for example, if someone was a terrorist and they went off. No, no, I understand that. But in this case, there was lots of talk, as you say, about violence, but it wasn't carried out. On your theory, if I understand it, if they had killed the man, because that was the only target and there was no history of violence before this, you would take the view that it doesn't predict anything about future violence because they achieved their singular objective and it's now done. And that seems ‑‑ there's something disquieting about that, so let me understand the argument clearly. Your Honor, I am not sure, Judge Ruggier, whether murder is a case with a statutory presumption of future danger. I believe it is. But I believe that ‑‑ so obviously if it is, then, yes, you could say, I'm denying bail because there's a statutory presumption. There's a presumption he will be a danger. He's killed someone already, but he hasn't here. That's a legislative decision. And under our statutory system, I believe only if there is a presumption built in that you can ‑‑ But I'm not sure you mean you don't have a presumption here, but wouldn't the same rationale apply that people who are prepared to discuss violence and make arrangements for the carrying out of violence, even if it's with a singular objective, present a risk? I believe that if you draw that conclusion, you are creating a statutory presumption for cases where the legislature has decided there should not be a statutory presumption. Well, I'm not sure because since this was talk rather than action, there might be arguments for why one shouldn't assume things. But I was concerned about the absolute argument that past conduct should not be viewed as predictive of future conduct, as I understand it now, unless you think there's a statutory presumption. More than that, Judge, I wouldn't be so black and white because I would say that sometimes past conduct, you can see someone's done this a bunch of times, someone's acted in a way that shows they have ‑‑ Here there was more than just talk. There was the payment of $75,000 in cash. Does that not support the district court's finding that it increased the likelihood of future violence? No, Your Honor. I think that the finding that he paid cash shows that the defendant's ‑‑ it may be evidence that the defendant's clue was involved in this past crime, but the $75,000 was being paid for that particular crime itself, and I don't believe that it shows any future likelihood of committing other crimes, particularly when, you know, I believe ‑‑ It means it shows, you know, a real desire to engage in the conduct? Yeah. I believe that the $75,000 is clear from the tapes and the evidence that the $75,000 was fund‑raised primarily, I believe, the tapes show from the family to pay for this person, who there is strong suggestion on the first tape that a lot of the money is being paid to follow the person. I just want to address the issue of risk of flight as well because that was the second basis for the finding. And with respect to the risk of flight, the court ‑‑ the district court clearly stated on page 34 of the court transcript, the September 19th hearing, that although the defendant had foreign ties, the court said, and I quote, that there was a very substantial bail package being offered, and that bail package included $5 million bail, three financially responsible people signing on, $3 million worth of property, of equity in property being posted as bail, home detention, electronic monitoring. But the court said that for two reasons it was denying bail, and those two reasons were, one, that it was not nuclear family posting the property. And, Your Honor, I would suggest that I would submit that that's common, that nonnuclear family often posts. The nuclear family didn't have that money. These are close relatives, uncles who came to court and immediately were willing to put up that amount of money, which is money that they have spent their life earning and saving and putting away. And, of course, they would be available to be interviewed by the government to determine whether they are financially responsible. And the second reason that was set forth by the court was that the defendant would have to leave home for religious services. And he said that that was atypical, that it would be more than normal in electronic monitoring. Your Honor, I suggest that at the time that the court made that finding, it was right before the Jewish holidays, which occurred for the last month. And I understand that at that point the defendant would have been out for a long time. But that going forward at this point, that a person would not have to leave their home for long periods of time for religious services, and that that could be accommodated. And that is not unusual, also, with respect to allowing electronic monitoring in this district. Thank you. May it please the Court, my name is Scott Hartman. I represent the government on this appeal, and I represent the government below in the district court. Judge Stein did not err, much less clearly err, in finding that there are no combination of conditions that could reasonably guarantee the safety of the community and the defendant's reappearance for future court proceedings. That finding is consistent with the finding of the magistrate judge who initially heard Mr. Leibowitz's bail application, and it's also consistent with the evidence in this case. I'd like to start by addressing the argument that Ms. Necklace made with respect to the court's finding of future dangerousness. And I think what you see is a slight pivot from what we saw in the papers. There was an indication in the papers that Judge Stein had not considered the issue of future dangerousness. And the fact is that he very clearly did. There's an extended discussion in the bail argument in front of Judge Stein. It begins on page 9 of the transcript, in which Judge Stein is querying the government on why it is that the government believes that Mr. Leibowitz presents an ongoing danger to the community. And the response that we gave, which is the same response we would give to the court today, is that the offense conduct is relevant for making an assessment of future dangerousness. That is something that happens in almost every violence case, that the court has to weigh that. But in many of the cases, the person who is charged or whose bail is at issue is, you know, a member of a gang or there's past criminal conduct that makes one think that the violence is not uniquely targeted on a particular individual. And the suggestion by your adversary is that that makes a difference here. So tell me why you don't think it does. We would point to two things, first of all, to indicate that there may be other violence associated with this individual. So one of the things is there's a conversation that occurs, I believe, on September 2nd in which Mr. Leibowitz asks the source whether he's had a conversation with Benjamin Gottlieb, who is the person who put the source in communication with these individuals, about Mr. Gottlieb's desire to have someone followed. Our view is that that conversation relates to another one of these forced gets. There are statements that Mr. Leibowitz makes where he indicates that he has not done this before, and the appellant wants to argue that those are statements about obtaining forced gets. But if you look at the context in which those statements are made, it's clear that what they're talking about is a murder plan. And one of the things that I think has gotten lost at various points in this litigation over the bail issue is how serious the kidnapping plan was in this case. Even putting aside the murder-for-hire plan, the plan in this case was to forcibly take someone off the street, put them in a cage, and torture them until they agreed to give this religious divorce. And so even putting aside the allegations of murder and a conspiracy to kill someone, we would be looking at a very serious violent crime, and the government would be arguing for detention. And in fact, we did argue for detention with respect to Benjamin Gottlieb, who was only charged in the kidnapping conspiracy and was not charged in the murder-for-hire. Judge Stein actually considered those arguments and made the determination that with respect to Mr. Gottlieb, there wasn't an indication of future dangerousness sufficient to overcome the possibility of fashioning bail conditions, and he did bail Mr. Gottlieb. He bailed him over our objection and also over the magistrate's finding that there weren't such conditions. I think that the Court can look at that in making an assessment about Judge Stein and whether or not he applied the appropriate standard and whether or not he appropriately applied the law here. And what you see is far from some sort of reflexive decision to detain these individuals based on the fact that they were engaged in a violent crime, he's clearly engaging in an individualized and careful analysis of the evidence in the case, the evidence of other dangerousness, and also of what combination of conditions could guarantee the safety of the community. And there is a threat to the community here. There's a threat not only with respect to other forced gets. There's a threat with respect to the source, who is someone who would be very important to the government's case, and we have concerns about the safety of the source if the defendant were bailed. I admit home detention, there are certain things that could limit the defendant's ability to act, but one of the things that we argued below and that Judge Freeman in particular focused on is the fact that the defendant's role in this offense was he was using means of communication and intermediaries to orchestrate this violence. And that's something that can't be fully controlled even in a home detention setting. Can I ask you a question about that? It's satisfying my curiosity. We have some cases that go back a ways which suggested that we do take into account the fact that that kind of monitoring is of limited assurance that the person will be available. My question is simply, given what's going on in the electronic world, are the means, modern means of keeping track of people, monitoring them, keeping them in their home, has that changed so far as you know over the last? I mean, one can't help not violence, but think about Bernard Madoff who was, after all, out on bail. He certainly had enough money to get himself and a whole lot of other people to Nabibia or wherever they go. But I'm wondering about the technical part of that. Judge Sack, I don't know the specific conditions under which Mr. Madoff was released. My memory is that there were guards or something like that at the house. But there are two different ways in which pretrial services monitor people who are under home detention. One way is that there is traditional electronic monitoring. And so what that is is it's a bracelet tied to your landline. And when you leave the home, it alerts, and the landline phones some person or service that's monitoring it. Old-fashioned. That's the old-fashioned way. The modern way is a GPS bracelet that's actually affixed to the person, and it monitors their movements. Now, again, it relies on a human being to actually be looking at the computer or keeping track of where this person is. And even when an alarm goes off, it still requires someone to respond. We actually had a case in the Southern District of New York, I think a couple of years ago, where a defendant actually cut the bracelet. And I can't remember whether that was a GPS or an electronic monitoring device. And he was able to flip. I've led you astray from your argument, but that's very interesting. Thank you. You've had a lot of interesting variations on how to escape that. Nevertheless, the process is still used, and so the question is whether we've got the kind of findings necessary to deny it. Anything else? Your Honor, if the Court doesn't have any – oh, I'm sorry, were you asking a question? Any further argument. Otherwise, we'll let Ms. Nichols rebut. If the Court has no further questions, we'll rest on our paper. Thank you. Ms. Nichols, you did reserve a bit of time. Two small points. Thank you, Your Honor. First, the government suggests that in one of the tapes, the defendant said that he wanted – that there was another case that he was involved in where someone was being followed. And we don't have that tape. It hasn't been given to us still by the government. The only transcript – there's no transcript. There is a summary that I understand was made by the confidential source. But nonetheless, even if he was – or if someone was being followed, following someone is not uncommon in a divorce case. There's no indication of any violence in that other matter. And my understanding of what happened in that other tape is the confidential source asks about other cases and mentions that there's another matter involving Gottlieb and that involves someone being followed. So I don't think that that's any evidence. I disagree with the government about what the statement – the very strong statement by my defendant or my client where he says, I've never been involved in this, what this means. He says he's nervous about it. It's making him sick to think that there was going to be this kidnapping. And he's very nervous. And the confidential source reassures him, I've done this many times. It will be fine. They're not talking about a murder. The confidential source does not say he's murdered many people. He says that he's done this. But, I mean, whatever your defense may be, as this proceeds forward, there's further involvement by your client. That's not the last that he participates in this. Yeah. This just goes to the issue of whether he's done this on any other occasion. No. Okay. My argument here is he hasn't, and that the evidence is pretty strong, that he's never done this on any other occasion except when it's suggested to him by the confidential source. And finally, with respect to the concerns about the safety of the source, which is the other argument the government said, it's kind of – I'm surprised by that argument. The only intermediary that my client ever went to was the confidential source. He is not a person. He's a 25-year-old skinny yeshiva guy who's never been involved in any violence before, never been arrested before for anything in his life, wasn't involved in a case where he did something wrong, no question about it. He was trying to help a woman. He was wrong in what he did. But there is no evidence, none, that he's ever done anything violent in any case before or that he would act violently in the future. All right. Thank you. Thank you very much. We're going to take this matter under advisement. Obviously, it's a bail matter. We'll try and get you a decision quite quickly. Thank you. Thank you. Court is adjourned.